UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

D/F

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ SEP 29 2010 ★

LONG ISLAND OFFICE

-------------------------------------------------------------X

ADL, LLC A FLORIDA LIMITED LIABILITY COMPANY,
AS ASSIGNEE OF STRAUB INVESTMENTS, LTD.,

        Plaintiff,

        -against-

KHAJAK "JOHN" TIRAKIAN, JOSEPH MANBER,
ANDEL JEWELRY CORP., INDIVIDUALLY AND
AS SUCCESSOR IN INTEREST TO ANDEL
DOMINICANA, INC., ANDEL BKK, INC., THE
KHAJAK TIRAKIAN GRANTOR RETAINED
ANNUITY TRUST, JOHN C. SEARFOSS, FABIO
BERKOWICZ AND SOVEREIGN BANK, A
FEDERAL SAVINGS BANK,

        Defendants.

-----------------------------------------------------X

**ORDER**
**06 CV 5076 (SJF)(MDG)**

FEUERSTEIN, J.


On September 15, 2006, plaintiff ADL, LLC ("Plaintiff") commenced this action against

defendants Khajak Tirakian, Joseph Manber, Sovereign Bank ("Sovereign"), John C. Searfoss

and Fabio Berkowicz (the "Auditors"[1]), and related business entities asserting diversity

jurisdiction over claims of fraudulent inducement, negligent misrepresentation, aiding and

abetting fraud and conspiracy to defraud. Sovereign and the Auditors (the "Defendants") moved

to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure. Plaintiff opposed the Defendants' motions and moved to amend the complaint.

While the motions were pending, Plaintiff filed a second motion to amend the complaint (the

-----

[1]The Auditors, at the time of the events leading up to the investigation, were working at
the Edward Issacs accounting firm.

1

"Complaint"). Pursuant to a Referral dated March 11, 2008, a Report and Recommendation (the "Report") of Magistrate Judge Marilyn Go, dated August 26, 2010, recommended that Plaintiff's motion to amend the Complaint be granted, and that the Defendants' motions to dismiss be denied. Report at 50. Upon review of the Report and consideration of the Defendants' objections, the objections are overruled and the Report is accepted in its entirety.

I.     Factual Summary

Plaintiff entered into several purchasing agreements for Andel Jewelry Corp. ("AJC") on September 19, 2000. Plaintiff received a seventy percent (70%) ownership interest in AJC in exchange for a five million dollar ($5,000,000) capital investment and a five million dollar ($5,000,000) loan as a senior subordinated debt to be repaid within five years. Complaint at ¶¶ 30-33. Prior to purchasing his stake in AJC, Plaintiff conducted a due diligence review as to the recent financial status and financial history of AJC. *Id*. at ¶¶ 34-35. Plaintiff alleges that in the course of the review, the Defendants were aware that the officers of AJC had been filing false financial reports and were on the verge of bankruptcy or defaulting on outstanding credit agreements, and nevertheless repeatedly made representations that AJC was financially sound. *Id*. at ¶¶ 38, 41-43, 59-81, 82-99. Plaintiff invested in AJC based upon the Defendants' representations. *Id*. at ¶¶ 136, 151. Starting in 2005, Plaintiff discovered that the Defendants had misrepresented the financial state of AJC, by which time AJC had gone into bankruptcy. *Id*. at ¶¶ 51, 76, 77, 113A. Plaintiff alleges that as a result of investing in AJC: (1) he lost his ten million dollar ($10,000,000) investment, (2) that he was forced to spend in excess of four

2

hundred and fifty thousand dollars ($450,000) in attorneys fees, and (3) that he would not have made the investment if the Defendants had accurately represented the financial state of AJC during his due diligence review. *Id.*

II.    Discussion

    A.    Standard of Review

Rule 72 of the Federal Rules of Civil Procedure permits magistrate judges to conduct proceedings on dispositive pretrial matters without the consent of the parties. Fed. R. Civ. P. 72(b). Any portion of a report and recommendation on dispositive matters, to which a timely objection has been made, is reviewed *de novo*. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). However, "general or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error." Johnson v. Connolly, No. 9:07-CV-1237, 2010 WL 2628747, at *1 (N.D.N.Y. Jun. 25, 2010). See also Vega v. Artuz, No. 97 Civ. 3775, 2002 WL 31174466, at *1 (S.D.N .Y. Sept. 30, 2002) (noting that "objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke de novo review"). The court is not required to review the factual findings or legal conclusions of the magistrate judge as to which no proper objections are interposed. See Thomas v. Arn, 474 U.S. 140, 150, 106 S.Ct. 466 (1985). Whether or not proper objections have been filed, the district judge may, after review, accept, reject, or modify any of the magistrate judge's findings

or recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

B.    Defendants' Objections

Sovereign objects to the Report claiming that the Magistrate Judge misapplied the standards on a Rule 12(b)(6) motion to dismiss and a Rule 15(a) motion for leave to amend a complaint.  Sovereign argues that the allegations in the Complaint do not support the finding that Sovereign owed a duty to Plaintiff, do not support a fraudulent inducement claim, and do not sufficiently allege loss causation as to all claims.  Sovereign also contends that the claims are time-barred by the statute of limitations.  The Auditors join in Sovereign's objections, and additionally object to the Report's conclusion that the Auditors were privity with Plaintiff.  As these objections are specific and timely raised, they are reviewed *de novo*.

1.    Standard of Review under Rule 12(b)(6)

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed.2d 1081 (2007). See also Boykin v. KeyCorp, 521 F. 3d 202, 214 (2d Cir. 2008).  "A pleading that offers 'labels and conclusions'

4

or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, ---
U.S. ----, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 555).
"Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of further factual
enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. 1955). "Factual allegations
must be enough to raise a right to relief above the speculative level, on the assumption that all the
allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 545. The
plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully."
Iqbal, --- U .S. ----, 129 S. Ct. at 1949.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the
claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences
in favor of the plaintiff. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008) (quoting Chambers
v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002)). However, this tenet "is inapplicable to
legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere
conclusory statements, do not suffice." Iqbal, ---U.S. ----, 129 S. Ct. at 1949. "While legal
conclusions can provide the framework of a complaint, they must be supported by factual
allegations." Id. at 1950.[1]

---

[1] In determining a motion to dismiss, the Court must limit itself to the facts alleged in the
complaint, which are accepted as true, and to any documents attached to the complaint as
exhibits or incorporated by reference therein, to matters of which judicial notice may be taken, or
to documents upon the terms and effect of which the complaint "relies heavily" and which are,
thus, rendered "integral" to the complaint. Chambers, 282 F.3d at 152-53.

2. Sovereign's Duty to Plaintiff

To state a claim of fraudulent misrepresentation, Plaintiff must allege a duty arising out of special relationship. See Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 20 (2d Cir. 2000). In order to determine if a special relationship exists, courts will consider "whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 103 (2d Cir. 2001), (quoting Kimmell v. Schaefer, 89 N.Y.2d 257, 652 N.Y.S.2d 715, 675 N.E.2d 450 (1996)). Generally, this determination requires a factual inquiry. See id.

The Complaint alleges that Plaintiff relied on the representations of two individuals, Elizabeth Sousa and Albert Brown, representatives of Sovereign who were aware of AJC's financial problems when Plaintiff met with them. Complaint at ¶¶ 59-81. The Complaint further alleges that Sousa and Brown indicated that Sovereign had an excellent relationship with AJC and the other defendants, and that although there had been some financial issues in the past, the issues had been timely corrected, and that the issues were a result of insufficient credit to cover AJC's "substantial growth of revenue." Id. at ¶ 74.

Assuming the truth of the allegations in the Complaint, Sovereign's role as bank and financier to AJC tends to indicate that it's representatives had knowledge of AJC's financial situation, held themselves out as possessing special knowledge, and gave Plaintiff a reason to rely on their representations.

Plaintiff alleges that Sovereign omitted information about AJC's false filings and financial troubles and misrepresented defendant's financial situation. *Id.* at ¶¶ 67-75. Plaintiff relied upon this information and alleges that, by meeting with Plaintiff and repeatedly assuring Plaintiff of the financial stability of AJC during the due diligence review, Sovereign knew or should have known that Plaintiff would rely upon the representations when considering whether to invest in AJC. *Id.* at ¶ 78. A special relationship may have been created by offering information of AJC's financial stability in the context of Plaintiff's due diligence review.

### 3. The Auditors' Duty to Plaintiff

To find that an accountant owes a duty to non-contractual party for statements contained in financial reports: "(1) the accountant[] must have been aware that the financial reports were to be used for a particular purpose or purposes; (2) in the furtherance of which a known party or parties was intended to rely; and (3) there must have been some conduct on the part of the accountant[] linking [him] to that party or parties, which evinces the accountant['s] understanding of that party or parties' reliance." Credit Alliance Corp. v. Arthur Anderson & Co., 65 N.Y.2d 536, 551, 493 N.Y.S.2d 435 (1985). If this "linking requirement" is met, an accountant may have a duty to a non-contractual party in a negligent misrepresentation claim. Id.

The Complaint alleges that the Fabio Berkowicz and John Searfoss were "in charge" of the audited information as the partner and manger of Edward Issacs Accounting firm respectively. Complaint at ¶¶ 14, 15, 29. The Complaint further alleges that the Auditors were aware that the audited information was included in the financial statements provided to Plaintiff,

and that they would be relied upon by investors who might consider purchasing AJC. *Id.* at ¶ 85. Specifically, the Complaint alleges that the Auditors knew that Plaintiff was relying on the Auditor's interim reports, and gave "verbal and written assurances as to the accuracy and reliability" of those reports. *Id.* at ¶ 95.

According to Plaintiff, the Auditors continued to assure the Plaintiff that their reports were accurate and that AJC was financially sound during Plaintiff's investigation, indicating that the Auditors were aware that Plaintiff would use these reports in contemplation of purchase, and that they intended to have Plaintiff rely on their representations. Plaintiff also argues that the Auditors link themselves to Plaintiff through their written and verbal communications demonstrating they knew or should have known that Plaintiff would rely on those communications in the due diligence review.

The Auditors argue that the complaint does not specifically detail the communications made by the individuals Berkowicz and Searfoss, and therefore, does not adequately plead the "linking requirement" articulated in <u>Credit Alliance Corp.</u> They argue that the Complaint only alleges generally that the Auditors were aware of the representations, and does not detail who made representations and when the representations were made. According to the Complaint, Searfoss and Berkowicz made representations in their capacity as manager and partner in charge of the audit, on which the Plaintiff relied to its detriment. Complaint at ¶¶ 97-99. Specific dates, times and statements are not required at the pleading stage. <u>See Federal Nat'l Mortg. Ass'n v. Olympia Mortg. Corp.</u>, No. 04-CV-4971, 2006 WL 2802092, at *11 (E.D.N.Y. Sept. 28, 2006) (finding that even if the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure are applicable to a state law claim of fradulent misrepresentation, "the <u>Credit</u>

8

Alliance prerequisites need not be pled with particularity" because the linking requirement is not one of the circumstances constituting fraud or mistake requiring particularity.). If, however, the allegations in the complaint are true, the Auditors owed a duty to Plaintiff, the breach of which would constitute a negligent misrepresentation claim.

### 4. Fraudulent Inducement

A complaint for fraudulent inducement must allege "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001) (citing Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996). The Complaint alleges that Sovereign was aware of AJC's financial problems, and that false reports had been filed on AJC's behalf. The Complaint further alleges that despite this knowledge, Sovereign misrepresented to Plaintiff that AJC was financially sound and had an excellent relationship with the bank. Complaint at ¶ 69-75, 78. Further, the allegations contained in the Complaint state that Sovereign knew Plaintiff was relying on this information in the due diligence review, that Plaintiff actually relied on its representation by investing in AJC, and as a result, Plaintiff lost, inter alia, his total investment of ten million dollars. *Id.* at ¶ 95. Plaintiff's pleadings sufficiently state a fraudulent inducement claim.

5. Loss Causation

Loss causation requires that there be traditional, common law proximate cause between a party's action and the harm alleged. AUSA Life Ins. Co. v. Ernst & Young, 206 F.3d 202, 209 (2d Cir. 2000). To establish whether a party's action is related to the harm, a court looks at whether "the damage complained of [is] one of the foreseeable consequences of the misrepresentation." Id. at 212 (quoting Manufacturers Hanover Trust v. Drysdale Sec. Corp., 801 F.2d 13, 21 (2d Cir. 1986)). Loss causation may be pleaded by allegations that Plaintiff "would not have entered the transaction but for the misrepresentations and that the defendants' misrepresentations induced a disparity between the transaction price and the true 'investment quality' of the securities at the time of transaction." Suez Equity, 250 F.3d at 97-98.

The Complaint alleges that Plaintiff relied upon the representations made by the Defendants; that Plaintiff invested in AJC unaware of its true investment quality and suffered a loss in excess of ten million dollars; and that Plaintiff would not have invested in AJC had the Defendants accurately represented AJC's financial status and history. Complaint at ¶ 137, 144, 151, 159. These allegations sufficiently state a claim of proximate causation against Sovereign and the Auditors.

Defendants argue that it is implausible that Plaintiff's alleged financial losses were a reasonably foreseeable result of representations made during the due diligence review. Whether the representations were sufficient to induce reliance, whether they created a disparity between the transaction price and the true investment quality, and the amount of that disparity are questions of fact to be determined at trial or a motion for summary judgment following

10

discovery.

### 6. Application of the Statute of Limitations

The Defendants do not raise specific objections or arguments in response to the Report's recommendation that the claims should not be dismissed at the pleading stage as time-barred except insofar as the Auditors argue that if the court should find a duty between the Auditors and Plaintiff, the negligent misrepresentation claim is not subject to the tolling rules of discovery and therefore time-barred. On this issue, the Court accepts the Recommendation that the claims were timely made under the applicable state's respective discovery rules, as there was no clear error in the application of law.

### 7. Motion to Amend the Initial Complaint and First Amended Complaint

A court may give parties leave to amend a complaint freely when justice requires under Rule 15(a)(2) of the Federal Rules of Civil Procedure. See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) ("absent bad faith or undue delay on the part of the movant, undue prejudice to the opposing party, or futility of the amendment, a court should grant leave to amend a complaint.")), Grace v. Rosenstock, 228 F.3d 40, 53 (2d Cir. 2000). An amendment is futile where the amended complaint fails to state a claim and would be subject to a motion to dismiss. See Acito v. IMCERA Group, Inc., 47 F.3d 47, 54-5 (2d Cir.

1995).

Magistrate Judge Go found that Plaintiff did not proceed in bad faith or with undue delay, and that the repeated filings did not prejudice any party as the subsequently filed Complaint did not add new parties or claims. The Defendants claim that the Second Amended Complaint filed with the second motion to amend, does not allege a cause of action against them, and that the doctrine of futility precludes its acceptance. However, as noted above, the allegations in the Complaint sufficiently state several causes of action against Sovereign and the Auditors. Therefore, Plaintiff's motion to amend the Complaint is granted. Plaintiff should file and serve the Second Amended Complaint by October 30, 2010.

III.     Conclusion

For the foregoing reasons, the Defendants' objections are overruled, the Report is accepted in its entirety, and (1) Plaintiff's motion to amend the complaint is granted; (2) Sovereign's motion to dismiss is denied with prejudice; and (3) the Auditors' motion to dismiss is denied with prejudice. The Auditors' request for oral argument is denied.

**SO ORDERED.**

_____
Sandra J. Feuerstein
United States District Judge

9/29/10

September 29, 2010
Central Islip, New York